UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-80388-CIV-MARRA

RAZOR CAPITAL, LLC, a Minnesota
limited liability company,

Plaintiff,

vs.

CMAX FINANCE LLC, a Delaware
limited liability company,

Defendant.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant CMAX Finance LLC's Motion to Dismiss the First Amended Complaint (DE 14). The Motion is fully briefed and ripe for review. The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I. Background

Plaintiff Razor Capital, LLC ("Plaintiff") brings this five-count First Amended Complaint[1] ("FAC") (DE 12) against Defendant CMAX Finance LLC ("Defendant") for fraud in the inducement (count one); negligent misrepresentation (count two); unjust enrichment (count three); tortious interference with contract (count four) and a violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statute §501.201.

According to the allegations of the FAC, which this Court must accept as true for purposes of this motion, Plaintiff buys, sells and collects on defaulted consumer debt including defaulted residential mortgages. Defendant holds itself out and acts as a lender to, and agent and

_____
[1] Plaintiff filed the initial complaint on March 24, 2017. (DE 1.)

broker of, companies seeking to sell debt portfolios which include such defaulted debt. This action arises out of Plaintiff's $730,000.00 purchase of a pool of defaulted debt (hereinafter, "mortgage loan file") that Defendant was brokering. (FAC ¶1.) Beginning in 2011, Defendant began discussions with the principals of a company called HP Debt Exchange, LLC ("HP Debt") for the purpose of lending money to HP Debt to purchase pools of delinquent consumer debt. Thereafter, Defendant successfully originated a loan to HP Debt that enabled HP Debt to purchase certain pools of delinquent consumer debt. One of Defendant's closely affiliated special purpose vehicles, CMAX Finance Partners I, LLC ("CMAX I") funded this loan. Defendant both serviced the loan and monitored the collateral. HP Debt's purchase included the mortgage loan file, which HP Debt then pledged as collateral back to CMAX I. (FAC ¶2.)

When the debt portfolio underperformed and HP Debt defaulted on its loan, Defendant discovered multiple material defects with the collateral, making it undesirable for Defendant to foreclose on the collateral as a remedy to recover upon its loan to HP Debt. (FAC ¶3.) Defendant then devised a plan to broker the debt/collateral for sale to a third party and pocket the proceeds from any sale, rather than foreclose upon the collateral. Defendant concealed and failed to disclose the material defects it discovered when it marketed the mortgage loan file for sale to third parties. Had Plaintiff known about these defects, it would not have purchased the mortgage loan file. (FAC ¶4.) Defendant also concealed the "sloppy" business practices and documentation of the seller to induce Plaintiff to purchase the mortgage loan file. (FAC ¶6.) Plaintiff paid a materially inflated price. (FAC ¶8.)

After the closing, Plaintiff discovered that many of the accounts in the mortgage loan file were subject to settlements that neither Defendant nor HP Debt disclosed and which substantially

reduced the unpaid principal balance of the mortgage loan file. (FAC ¶¶86-87.) Plaintiff tried to unwind the agreement and obtain a full refund from HP Debt. (FAC ¶89.) In so doing, Plaintiff spoke with Defendant, who averred that it did not know about the settlements and were "similarly duped." (FAC ¶¶90-97.) Defendant concealed its true level of knowledge and suggested that Plaintiff and Defendant file a "joint action" against HP Debt. (FAC ¶98.) Had Plaintiff known that Defendant had retained over 90% of the funds it sought to recover, it would have made immediate demands on Defendant to recover the funds. (FAC ¶103.) Instead, Plaintiff filed suit against HP Debt on February 4, 2013 and Plaintiff obtained a default judgment against HP Debt upon which it has been unable to collect. (FAC ¶¶105, 110.) As part of the documents Plaintiff received from Defendant during that litigation,[2] Plaintiff learned about Defendant's actions and concealment of the deal with HP Debt. (FAC ¶¶108-17.)

Defendant moves to dismiss on the following grounds: (1) the unjust enrichment, FDUTPA and tortious interference claims are barred by Florida's four-year statute of limitations; (2) the doctrine of delayed discovery does not apply to the fraud in inducement and negligent misrepresentation claims; (3) Plaintiff had a duty to reasonably investigate the material facts affecting its purchase; (4) Plaintiff should have named CMAX 1 as the defendant and (5) the claim for punitive damages are insufficiently pled and unsupported by Florida law.

Plaintiff responds that (1) Defendant's argument that Plaintiff has sued the wrong party amounts to Defendant improperly asking that the Court not take the allegations of the FAC as true; (2) the statute of limitations arguments involve factual issues that cannot be resolved on a

---

[2] These documents were obtained pursuant to a subpoena served on Defendant on December 13, 2013. (FAC ¶108.)

motion to dismiss; (3) Defendant's fraudulent concealment tolls the statute of limitations for the claims of unjust enrichment, violation of FDUTPA and tortious interference; (4) the claims for fraud and negligent misrepresentation are timely under the delayed discovery doctrine; (5) the FAC properly pleads that Defendant's omissions and misrepresentations were material to Plaintiff and (6) the FAC sufficiently pleads facts to support an award of punitive damages.

In reply, Defendant contends that the face of the FAC demonstrates that neither equitable tolling nor the delayed discovery doctrine are applicable. Specifically, Defendant claims that fraudulent concealment does not equitably toll Florida's statute of limitations on any claims. Defendant also claims that the delayed discovery doctrine does not delay accrual of Plaintiff's claims for fraud and negligent misrepresentation as a matter of law.

Plaintiff has filed a sur-reply to address the application of equitable tolling.[3]

II. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[3] The Court granted Plaintiff's motion to file a sur-reply. (DE 25.)

accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

III. Discussion[4]

"A statute of limitations bar is "an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint." La Grasta v. First Union Securities, Inc., 358 F.3d 840, 845 (11th Cir. 2004) (brackets and ellipsis omitted). "[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." Id.

With respect to the claims for unjust enrichment, FDUTPA and tortious interference, Plaintiff asserts that the doctrine of equitable tolling applies. Equitable tolling may delay the running of the statute of limitations period based on the plaintiff's "blameless ignorance" and the lack of prejudice to the defendant. Machules v. Dept. of Admin., 523 So. 2d 1132, 1133-34 (Fla. 1988). The doctrine does not require misconduct on the part of the defendant. Id.

This Court has previously held that Florida law does not permit the application of

---

[4] In a diversity case, the Court applies Florida law. See Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1132–33 (11th Cir. 2010); Royal Ins. Co. of America v. Whitaker Contracting Corp., 242 F.3d 1035, 1040 (11th Cir. 2001).

equitable tolling based on circumstances not listed in Florida Statute §95.051.[5]  See, e.g., Baez v. Root, 13-cv-81158, 2014 WL 1414433, at * 3 (S.D. Fla. Apr. 11, 2014);  In re Chiquita Brands

---

[5] (1) The running of the time under any statute of limitations except ss. 95.281, 95.35, and 95.36 is tolled by:
    (a) Absence from the state of the person to be sued.
    (b) Use by the person to be sued of a false name that is unknown to the person entitled to sue so that process cannot be served on the person to be sued.
    (c) Concealment in the state of the person to be sued so that process cannot be served on him or her.
    (d) The adjudicated incapacity, before the cause of action accrued, of the person entitled to sue. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.
    (e) Voluntary payments by the alleged father of the child in paternity actions during the time of the payments.
    (f) The payment of any part of the principal or interest of any obligation or liability founded on a written instrument.
    (g) The pendency of any arbitral proceeding pertaining to a dispute that is the subject of the action.
    (h) The period of an intervening bankruptcy tolls the expiration period of a tax certificate under s. 197.482 and any proceeding or process under chapter 197.
    (i) The minority or previously adjudicated incapacity of the person entitled to sue during any period of time in which a parent, guardian, or guardian ad litem does not exist, has an interest adverse to the minor or incapacitated person, or is adjudicated to be incapacitated to sue; except with respect to the statute of limitations for a claim for medical malpractice as provided in s. 95.11. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.

    Paragraphs (a)-(c) shall not apply if service of process or service by publication can be made in a manner sufficient to confer jurisdiction to grant the relief sought. This section shall not be construed to limit the ability of any person to initiate an action within 30 days after the lifting of an automatic stay issued in a bankruptcy action as is provided in 11 U.S.C. s. 108©.

    (2) A disability or other reason does not toll the running of any statute of limitations except those specified in this section, s. 95.091, the Florida Probate Code, or the Florida Guardianship Law.

Florida Statute § 95.051.

Int'l, Inc., 690 F. Supp. 2d 1296, 1315 n.10 (S.D. Fla. 2010 ).[6] Specifically, the Court has found that equitable tolling is limited to administrative actions. Baez, 2014 WL 1414433, at * 3 (citing HCA Health Servs. of Fla., Inc. v. Hillman , 906 So. 2d 1094, 1098-99 (Fla. Dist. Ct. App. 2004); Lopez v. Geico Cas. Co., 968 F. Supp. 2d 1202, 1206 (S.D. Fla. 2013); Watson v. Paul Revere Life Ins. Co., No. 11–21492–CIV–KMM, 2011 WL 5025120, at *4 (S.D. Fla. Oct. 21, 2011); Socas v. Northwestern Mut. Life Ins. Co., 829 F. Supp. 2d 1262 (S.D. Fla. 2011); Pierson v. Orlando Reg'l Healthcare Sys., Inc., No. 6:08–cv–466–Orl–28GJK, 2010 WL 1408391, at *15 (M.D. Fla. 2010)).

Nonetheless, Plaintiff has provided authority to the contrary and the Court will analyze it. The most persuasive case Plaintiff provided is Carroll v. TheStreet.com, Inc., No. 11-cv-81173, 2014 WL 5474061, at * 6 (S.D. Fla. July 10, 2014). The court in Carroll held that equitable tolling is not limited to the legislative constraints of Florida Statute §95.051. Id. at * 6. In so doing, it relied upon two Florida Supreme Court cases, Major League Baseball v. Morsani, 790 So. 2d 1071 (2001) and Machules. The Court disagrees with the conclusion that these cases compel such a result.

To begin, Morsani primarily addressed the doctrine of equitable estoppel, not equitable tolling. Morsani, 790 So. 2d at 1076. In fact, Morsani distinguished equitable estoppel from other legal theories that operate to deflect the statute of limitations, such as accrual, tolling, equitable tolling and waiver. Id. at 1076-77. In describing "tolling," Morsani stated, in a footnote, that "[s]tatutory bases for tolling the statute of limitations are set forth in section

---

[6] While Plaintiff correctly references this case for support, it references the wrong portion of the case. The portion of the case cited by Plaintiff addresses equitable tolling under federal common law, which is permissible, not state law which applies here. Id. at 1305-06.

7

95.051, Florida Statutes," and "equitable tolling" involves no misconduct on the part of the defendant and is based on the "plaintiff's blameless ignorance and the lack of prejudice to the defendant." Id. at n.11, 12. Significantly, in describing equitable tolling, Morsani cited to Machules. Id. at n.12. Unlike in Morsani, however, Machules involved the limitations period for filing an *administrative* appeal of a public employee's discharge.[7] Machules, 523 So. 2d at 1133 (emphasis added). In other words, Macules addressed equitable tolling in the circumstance of a Florida administrative proceeding.[8]

Plaintiff also cites a line of cases that it claims stands for the proposition that equitable tolling applies when a plaintiff alleges fraudulent concealment. While it is certainly true that Florida law permits a tolling of the statute of limitations when there has been fraud or fraudulent concealment, this is not the same as "equitable tolling." [9] In fraudulent concealment cases, the plaintiff must show (1) successful concealment of the cause of action; (2) fraudulent means to

---

[7] In Machules, the Florida Supreme Court applied equitable tolling, finding that the doctrine tolled the limitations period to allow the employee to file an appeal of his discharge with the Florida Department of Administration since his union had filed a grievance instead of an administrative appeal, and the State had set the grievance hearing for the day after the end of the 20-day period. Id.

[8] The Caroll court also cites to Aruanno v. Martin County Sheriff, 343 F. App'x 535, 537 n.2 (11th Cir. 2009). That case, however, simply notes that tolling is permitted under Florida Statute § 95.051 and equitable tolling is available under Morsani.

[9] Many of cases cited by Plaintiff address fraudulent concealment and not equitable tolling, See, e.g., In re Takata Airbag Products Liability Litigation, 193 F. Supp. 3d 1324, 1346 (S.D. Fla. 2016); State Farm Mut. Auto. Ins. Co. and State Farm Fire & Casualty Co. v. B & A Diagnostic, Inc., 145 F. Supp. 3d 1154, 1170 (S.D. Fla. 2015); State Farm Mut. Auto. Inc. Co. v. Kugler, No. 11–80051, 2011 WL 4389915, at * 13 (S.D. Fla. Sept. 21, 2011); Grossman v. Greenberg, 619 So. 2d 406, 408 (Fla. Dist. Ct. App. 1993). Some of these cases mistakenly use the term "equitable tolling," when they actually apply the doctrine of fraudulent concealment.

8

achieve that concealment and (3) that the plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of the claim. See Berisford v. Jack Eckerd Corp., 667 So. 2d 809, 811-12 (Fla. Dist. Ct. App. 1995). The Eleventh Circuit has explained that "[f]raudulent concealment requires the defendants to engage in the willful concealment of the cause of action using fraudulent means to achieve that concealment." Raie v. Cheminova, Inc., 336 F.3d 1278, 1282 n.1 (11th Cir. 2003) (citing Berisford, 667 So. 2d at 811); see also Nardone v. Reynolds, 333 So. 2d 25, 39 (Fla. 1976) ("the statute of limitations will be tolled when it can be shown that fraud has been perpetrated on the injured party sufficient to place him in ignorance of his right to a cause of action or to prevent him for discovering his injury."), modified on other grounds, Tanner v. Hertog, 618 So. 2d 177 (Fla. 1993).

In other words, "fraudulent concealment goes beyond mere non-disclosure, and must constitute active and willful concealment." Licul v. Volkswagen Group of Am., Inc., No. 13-61686-CIV, 2013 WL 6328734, at * 6 (S.D. Fla. Dec. 5, 2013); see also Nardone, 333 So. 2d at 39 ("generally the fraud must be of such a nature as to constitute active concealment to prevent inquiry or elude investigation or to mislead a person who could claim a cause of action"); Vargas By and Through Vargas v. Glades General Hosp., 566 So. 2d 282, 285 (Fla. Dist. Ct. App. 1990) (the courts will not protect defendants who are directly responsible for the delays of filing because of their own willful acts; it is a doctrine to prevent the court from participating in the fraud of the defendant). Whether or not fraudulent concealment is sufficient to toll the statute of limitations is a question of fact. See Walker v. Dunne, 368 So. 2d 640, 641 (Fla. Dist. Ct. App. 1979).

Based on the facts alleged post-closing, the Court finds that Plaintiff has alleged adequate

9

facts to allow the claims to go forward based on the doctrine of fraudulent concealment. (FAC ¶¶ 86-117.)

With respect to the fraud and negligent misrepresentation claims, Plaintiff invokes the doctrine of delayed discovery. This doctrine "generally provides that a cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action." Hearndon v. Graham, 767 So. 2d 1179, 1184 (Fla. 2000) (citing Hillsborough Community Mental Health Ctr. v. Harr, 618 So. 2d 187, 189 (Fla. 1993)). "In the civil context, a party who relies on a misrepresentation must show that it exercised some diligence in investigating the misrepresentation, unless it is shown that the fraudulent party had exclusive or superior knowledge, or prevented further investigation." Bedtow Group II, LLC v. Ungerleider, — F. App'x —, 2017 WL 1279036, at * 2 (11th Cir. Apr. 6, 2017) (quoting Adams v. Prestressed Sys. Indus., 625 So. 2d 895, 897 (Fla. Dist. Ct. App. 1993) (brackets and internal quotation marks omitted)).

According to Defendant, it did not have either exclusive or superior knowledge nor did it prevent further investigation. Defendant states that, with due diligence, Plaintiff could have discovered that CMAX 1 was HP Debt's lender and that CMAX I received some of the sale proceeds to satisfy its loan. (Mot. at 7.) With respect to the alleged defects in the portfolio, Defendant claims that the FAC demonstrates that Plaintiff failed to investigate various aspects of the portfolio before agreeing to purchase it. Finally, Defendant also claims that the FAC is devoid of any facts that Defendant acted as a broker for either HP Debt or Plaintiff, or otherwise incurred a duty to Plaintiff. (Mot. at 8.)

In response, Plaintiff points out that the FAC makes numerous allegations that Defendant

misrepresented or concealed facts material to Plaintiff's purchase of the mortgage loan file and post-sale investigation. (FAC ¶¶37-39, 49, 52-53, 56, 58-60, 65-70, 81-83, 86-87, 98, 115, 129, 141, 150, 158.)

In any event, the Court finds that it is not apparent from the face of the FAC that Plaintiff's claims are time-barred. To the contrary, the arguments made by the parties demonstrate that the delayed discovery issue is inextricably woven into factual questions surrounding the transaction at issue here. The Court cannot conclude from the face of the FAC that dismissal of the complaint based on delayed discovery is appropriate. Instead, the facts relating to what Plaintiff knew or should have known about this transaction should be explored through discovery. Likewise, Defendant's challenges to the FAC's assertion that Defendant acted as a broker and therefore had a duty to Plaintiff cannot be resolved at the motion to dismiss stage either.[10] See Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC, 650 F. Supp. 2d 1213, 1233 (S.D. Fla. 2009) (the duty to disclose is "ultimately a question of fact").[11]

---

[10] The FAC alleges Defendant acted as a broker and had a duty to Plaintiff. (FAC ¶¶ 1, 4, 29. 36, 85116-18, 177, 180.)

[11] The Court finds Defendant's remaining arguments also raise factual disputes that cannot be resolved at this early stage of the proceeding. With respect to the question of materiality for the fraud and negligent misrepresentation, the Court notes that, under Florida law, materiality is normally a question of fact. See Hauben v. Harmon, 605 F.2d 920, 924 (5th Cir.1979) (citing Biscayne Boulevard Properties, Inc. v. Graham, 65 So.2d 858 (Fla.1953)). (The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc)). As for Defendant's argument that Plaintiff sued the wrong party which it supported with evidence outside of the pleadings, the Court rejects this argument as well. See St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002) ( "[t]he scope of the review must be limited to the four corners of the complaint.")

11

Lastly, the Court denies Defendant's request to dismiss the request for punitive damages from the FAC. Simply put, "it is not appropriate at the motion to dismiss stage to sort out the type of damages that can be awarded." Krauser v. Biohorizons, Inc., No. 10–80454–CIV, 2010 WL 3468481, at * 5 n.9 (S.D. Fla. Sept. 1, 2010). This argument can be re-asserted at the appropriate time.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss the First Amended Complaint (DE 14) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 11th day of August, 2017.

_____
KENNETH A. MARRA
United States District Judge